1   WHATLEY DRAKE & KALLAS, LLC
    Joe R. Whatley, Jr.
2   jwhatley@wdklaw.com
    Edith M. Kallas
3   ekallas@wdklaw.com
    Patrick J. Sheehan
4   psheehan@wdklaw.com
    1540 Broadway, 37th Floor
5   New York, NY 10036
    Tel: (212) 447-7070
6   Fax: (212) 447-7077

7   THE CONSUMER LAW GROUP
    Alan M. Mansfield (SBN 125998)
8   alan@clgca.com
    9466 Black Mountain Rd., Suite 225
9   San Diego, CA 92126
    Tel: (619) 308-5034
10  Fax: (888) 341-5048

11  Howard Rubinstein
    Attorney at Law
12  howardr@pdq.net
    914 Waters Avenue, Suite 20
13  Aspen, CO 81611
    Tel: (832) 715-2788

14
    Attorneys for Plaintiffs
15

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18  JULIE MEAUNRIT and LANI FELIX            Case No.
    LOZANO, Individually and on Behalf of All
19  Others Similarly Situated,               CLASS ACTION    CV 09 4555

20              Plaintiffs,                   COMPLAINT FOR:
                                              1)  UNLAWFUL AND UNFAIR
21          v.                                    BUSINESS PRACTICES;
                                              2)  VIOLATION OF THE CONSUMERS
22  THE PINNACLE FOODS GROUP, LLC,               LEGAL REMEDIES ACT;
                                              3)  BREACH OF EXPRESS AND IMPLIED
23              Defendant.                        WARRANTIES;
                                              4)  VIOLATION OF MAGNUSON-MOSS
24                                               WARRANTY ACT;
                                              5)  COMMON COUNTS AND UNJUST
25                                               ENRICHMENT/COMMON LAW
                                                 RESTITUTION;
26                                            6)  STRICT LIABILITY/NEGLIGENCE;
                                              7)  DECLARATORY RELIEF
27
                                              **DEMAND FOR JURY TRIAL**
28

CLASS ACTION COMPLAINT              1              ORIGINAL

Plaintiffs Julie Meaunrit and Lani Felix Lozano, both individually and on behalf of all others similarly situated, upon both personal knowledge where specifically so stated and otherwise on information and belief, which allegations are based upon an investigation by counsel and that may have evidentiary support after an opportunity for discovery, allege as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action concerning deceptive and unfair business practices by Defendant The Pinnacle Foods Group, LLC ("Pinnacle"). Pinnacle, either directly or through its affiliated companies, designed, manufactured, marketed and sold various types of frozen food products in the United States. Pinnacle sells frozen food products under the "Swanson" and "Hungry Man" brands in grocery stores and retail outlet stores in California and the United States.

2.      Pinnacle defectively designed the products at issue herein in such a manner that, if prepared as directed by Pinnacle, they would not reach the "kill step" temperature necessary to destroy dangerous bacteria in the Swanson and Hungry Man brand beef, chicken and turkey pot pies placed into the market for consumption by consumers, including small children. Because Pinnacle failed to use appropriate quality control measures within its supply chain, almost every ingredient in these products is a potential carrier of pathogens, according to government and industry officials.

3.      While these pathogens can be destroyed if the pot pies are properly cooked, these products have been defectively designed such that even if a consumer is able to ascertain the information necessary to follow the cooking instructions supplied on the product packaging for the safety of such products and have the necessary equipment, they may not reach the required "kill step" temperature.

4.      Pinnacle concedes that it cannot fully ensure the safety of its food supply. Thus, even though it has exclusive knowledge of its supply chain, it is unfairly trying to shift the burden to the consumer to stop the risks from these pathogens. Yet it has the burden under the law not to sell adulterated products in the first place. Since there is no reasonable way to know whether

/ / /

Salmonella or other bacteria has been destroyed based on the design of these products, Plaintiffs and the class suffered harm due to Pinnacle's conduct.

5.     This action seeks compensatory damages as well as equitable, declaratory, injunctive and all other relief allowed in equity or at law.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this action under 28 U.S.C. § 1332(d), the Class Action Fairness Act, because the suit is a class action, the parties are minimally diverse, and the amount in controversy exceeds $5 million, excluding interest and costs.

7.     Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiffs reside in this District, and because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## PARTIES

8.     On personal knowledge, Plaintiff Julie Meaunrit is an individual and resident of this District as she resides in San Francisco, California. Over the last several years, Plaintiff has purchased frozen pot pies for consumption by her family made by Pinnacle, some as recently as April 2009. Plaintiff reasonably believed the products were properly and safely designed and that the products would be safe for consumption if microwaved for the time stated on the product. A substantial factor in deciding to purchase these products was the fact the products were represented to be microwavable, and her reasonable assumption that if she did so the products would be safe for consumption by her family. Yet, if she follows the cooking directions, the product does not reach the "kill step" temperature. Based on recent reports, Plaintiff believes she has no choice but to throw out these products as she cannot guarantee the safety of these products for consumption by her family, as a result of which she sustained a loss of money or property. Such facts were material to her, since if she had been told these products contained harmful pathogens or that the design of the product was such that even if she followed the cooking instructions it could lead to unsafe food, she would not have purchased such products or paid the prices she did.

/ / /

9. On personal knowledge, Plaintiff Lani Felix Lozano is an individual and resident of this District as she resides in Kentfield, California. Over the last several years, Plaintiff has routinely purchased frozen pot pies made by Defendant for consumption by her family. Plaintiff reviewed and reasonably believed the products' packaging was accurate and that these products would be safe for consumption if microwaved for the time stated on the product packaging. A substantial factor in deciding to purchase these products was the fact the products were represented to be microwavable and her reasonable assumption that if she did so the products would be safe for consumption by her family. Based on recent reports, Plaintiff believes she has no choice but to throw out these products as she cannot guarantee the safety of these products using an advertised characteristic of these products, as a result of which she sustained a loss of money or property. Such facts were material to her, since if she had been told these products contained harmful pathogens or that the cooking instructions were inaccurate and/or could lead to unsafe food, she would not have purchased such products or paid the prices she did.

10. Defendant Pinnacle Foods Group, LLC is a Delaware corporation with its principal place of business located at One Old Bloomfield Avenue, Mountain Lakes, New Jersey. Pinnacle is a leading manufacturer, marketer and distributor of branded food products, with over $2.1 billion in annual gross sales. The Blackstone Group, a global private investment and advertising group, acquired Pinnacle in or about February 2007, appointed its Chairman and Board of Directors, and is the sole owner of Pinnacle. As a result, although not named as a defendant, it is ultimately responsible for Pinnacle's conduct such that statements made by Blackstone are properly attributable to Pinnacle. Pinnacle conducts business in this District through the sales of food products through numerous retail and grocery stores in this District. Pinnacle develops, produces, markets and sells frozen food products that are distributed to major grocery stores and retailers. Pinnacle, either directly or through Blackstone, maintains offices in California, and also maintains distribution and warehousing facilities throughout the United States, and likely in California as well.

///

///

# FACTUAL ALLEGATIONS

## *Many Frozen Food Products Contain Harmful Bacteria*

11.     Previous reports have indicated that frozen food products have been found to contain various bacteria, including chloriform or Salmonella and other pathogens. According to the Center for Disease Control, Salmonella is a group of bacteria that can cause diarrheal illness in humans. Salmonella bacteria are microscopic living creatures that pass from the feces of people or animals to other people or animals. There are many different kinds of Salmonella bacteria, and Salmonella serotype Typhimurium and Salmonella serotype Enteritidis are the most common in the United States. Salmonella germs have been known to cause illness for over 100 years. As a result, food manufacturers must be extremely vigilant about the potential for Salmonella or other bacteria in their supply chain and frozen food products.

12.     It should be relatively easy for Pinnacle to avoid the potential for Salmonella contamination, since Salmonella is usually transmitted to humans by eating foods contaminated with animal feces. It should not be controversial whether Pinnacle should avoid introducing such contaminants into foods for public consumption. One of the problems associated with Salmonella is that foods contaminated with Salmonella usually look and smell normal, so even eating or smelling the food would not alert consumers to a possible issue. Moreover, Salmonella poisoning is very difficult to diagnose. Many different kinds of illnesses can cause diarrhea, fever, or abdominal cramps. Determining that Salmonella is the cause of the illness depends on laboratory tests that identify Salmonella in the stool of an infected person. Once Salmonella has been identified, further testing can determine its specific type. But unless consumers are aware of this potential for infection, neither they nor their physicians may suspect their illness is attributable to the presence of Salmonella or other pathogens in frozen food products.

13.     Pinnacle does not adequately test for pathogens within the constituent elements of its frozen food products and does not have adequate control over their supply chain, and thus concedes it cannot ensure the safety of the items it distributes for human consumption because almost every element of its frozen food products is a potential pathogen carrier.

/ / /

14.    Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs. Thorough cooking kills Salmonella and other pathogens; however, with the products in question it is difficult to determine if they have been thoroughly cooked and, therefore, whether cooking of the products has killed any harmful pathogens. Consumers such as Plaintiffs must rely materially on the design of the product and/or the accuracy of these products' instructions to ensure the safety of the products they consume.

15.    It is particularly important for manufacturers and distributors of food products to refrain from exposing consumers, and particularly small children, to the potential for being infected with bacteria that can induce harmful physical reactions. This is a material fact and duty as it relates to the safety of such products. Pinnacle was aware of or should have known but failed to adequately protect against, attempting to shift their corporate responsibility on to the consumers of its products.

16.    Reasonable consumers would attach importance to facts regarding the potential of such pathogens in these products in determining whether to purchase such products, making such facts material to consumers. However, under the circumstances present here, no reasonable consumer could make such a determination, particularly prior to purchasing such products. For example, while it might be relatively easy to figure out when certain foods are "well-done" by physically checking the food, it is unreasonable to expect consumers know how the cooking power of their microwave ovens compares with other ovens, or potentially even to know what that wattage is. As one food scientist explained, "Even if I have a 1,000-watt microwave, how do I know if it's high, medium or low?" according to Douglas Powell, an associate professor and scientific director of the International Food Safety network at Kansas State University ("IFSN").

17.    In addition, these products are designed in such a way that, even if the cooking directions are followed, the products may not reach the required internal temperature to kill such pathogens, which is approximately 170 degrees throughout the entire product.

18.    As stated by another food scientist, Dr. Michael Osterholm, "I do not believe it is fair to put this responsibility on the back of the consumer, where there is substantial confusion about what it means to prepare that product."

19.     True and correct copies of exemplars of the product packaging for the Pinnacle pot pie brands purchased by Plaintiffs are attached hereto as Exhibit 1.

20.     As *The New York Times* recently concluded, "unwitting consumers who buy these products for their convenience mistakenly think that their cooking is a matter of convenience and not safety."

21.     Pinnacle's design, oversight and quality controls were and are inadequate, resulting in the potential for Salmonella and other pathogens to be in these food products and not destroyed when cooked, even though these products are intended to be consumed by young children.

22.     Pinnacle failed to properly test and screen product ingredients during and after the manufacturing process and failed to design the products to be cooked in a manner that ensures these products were safe before placing the food products into the stream of commerce, and as a result sold adulterated food products to the consumer public targeted by such products, as that term is defined by, *inter alia*, Cal. Health & Safety Code §§110545 *et seq.* and 113732.

23.     Plaintiffs are conscientious about food safety and reasonably presumed the frozen food products they purchased were safe and appropriate for their intended use if microwaved. Plaintiffs purchased the defective food products at stores in California for use by their families.

24.     Pinnacle's defective food products failed to provide the safety and quality reasonably expected by consumers, and neither Plaintiffs nor likely many Class members would have purchased these products or paid the prices they did had these material misrepresented and undisclosed facts been disclosed (*i.e.*, that the products were microwavable, but even if a consumer microwaved the product as Pinnacle directed they could not ensure the product was free from pathogen contamination).

25.     Based on the need to protect the public from being unnecessarily exposed to toxic bacteria in food products, Pinnacle owes a duty to Plaintiffs and to Class members to design, manufacture, market, distribute and sell food products without hidden and concealed latent defects that cannot be identified or may not be destroyed based on the design of the product, even if a product has been cooked according to Pinnacle's own instructions.

CLASS ACTION COMPLAINT                    7

26.   Pinnacle breached and continues to breach that duty by placing into the stream of commerce unreasonably dangerous products that are not fit for their intended use. These products are unreasonably dangerous and defective because they may contain toxic bacteria that cause severe illness in consumers, and particularly small children. Pinnacle breached this duty, which caused injury in fact and a loss of money or property to Plaintiffs in terms of monies expended on products that they no longer feel are safe for themselves or their children to eat, even if microwaved as instructed.

27.   Pinnacle in the exercise of reasonable care should have known these particular food products were defective in their design and manufacture. Pinnacle also should have known Plaintiffs and Class members may reasonably have been expected to purchase and use these food products and could be affected by their defective condition.

## CLASS ACTION ALLEGATIONS

28.   Plaintiffs bring this action individually and as a class action under Federal Rule of Civil Procedure 23 on behalf of all persons, either in California or throughout the United States, who purchased, other than for resale or distribution, pot pie products under the Swanson and Hungry Man brand names since January 1, 2008. Excluded from the Class are Pinnacle's and the Court's officers and directors, families or legal representatives, heirs, successors, or assigns and any entity in which Pinnacle has or had a controlling interest.

29.   Plaintiffs reserve the right to amend or modify the Class definition in connection with a Motion for Class Certification or the result of discovery.

30.   Joinder of the individual members of the proposed Class is impracticable. The Class includes tens of thousands of persons geographically dispersed throughout California and the United States. The precise number and identities of Class members are unknown to Plaintiffs, but may be able to be ascertained through discovery by using retail records of sales and other information kept by Pinnacle or its agents or retailers. Notice can be provided through a combination of e-mail, mail, sign postings and publication, the cost of which should be imposed upon Pinnacle.

///

31.    The Class is ascertainable and there is a well-defined community of interest in the questions of law and/or fact alleged since the rights of each Class member were violated in similar fashion based upon Pinnacle's misconduct.

32.    Questions of law and/or fact common to the Class as to Plaintiffs and all Class members exist. Among the common questions of law and/or fact are the following:

(a)    whether Pinnacle distributed the food products at issue containing dangerous bacteria;

(b)    whether Pinnacle's design of the food products made them defective or unreasonably dangerous for their intended use;

(c)    whether Pinnacle failed to properly test, or disclose or warn Plaintiffs and the Class, of the potential dangers and adverse health effects arising from the preparation of such products in accordance with the product directions, even if they could be followed;

(d)    whether Pinnacle violated California consumer protection laws in the manufacture, distribution, marketing and/or sale of these food products;

(e)    whether Pinnacle was unjustly enriched by selling these products;

(f)    the appropriate nature of class-wide equitable relief; and

(g)    the appropriate measure of restitution or damages to award to Plaintiffs and the Class.

33.    As detailed above, Pinnacle engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs and Class members. Any individual questions that may arise are far outstripped by numerous common issues. The common issues listed above therefore predominate.

34.    The injuries sustained by Plaintiffs and Class members flow from a common nucleus of operative facts arising from Pinnacle's misconduct, based on the defective design of these products that rendered the products potentially unsafe if microwaved.

35.    Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs' and the Class' injuries arose from a common set of facts arising from and directly connected to Pinnacle's unlawful conduct as detailed herein.

36.     Plaintiffs will fairly and adequately protect the Class' interests.  Plaintiffs have no interests materially adverse to or antagonistic with Class members' interests and have retained counsel with significant experience in the prosecution of class actions and complex litigation, including consumer litigation, and who will vigorously prosecute this action.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and individual joinder of all Class members is impracticable, if not impossible because Class members are located throughout California and the United States. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits.  There are no manageability issues Plaintiffs foresee that cannot be overcome.  By contrast, a class action presents fewer management difficulties, conserves litigant and Court resources, protects Class members' rights and maximizes recovery.

38.     Pinnacle has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

## COUNT I

**Unlawful and Unfair Business Practices, California Business and Professions Code §§ 17200, *et seq.***

39.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

40.     Pinnacle's practices as alleged in this Complaint constitute unlawful or unfair business practices under the Business and Professions Code §§ 17200, *et seq.* ("UCL").  Such conduct also violates other comparable and applicable state consumer protection laws, which laws do not materially conflict with the UCL.

41.     Pinnacle committed unlawful business practices by engaging in conduct that violates the California Food, Drug and Cosmetic Act, including but not limited to Health & Safety Code §110620, *et seq.* and analogous laws that prohibit the sale of adulterated or

misbranded food products.    Food containing Salmonella or other bacterial pathogens unquestionably would so qualify.    Such conduct also constitutes uniform breaches of express or implied warranties, as well as Business and Professions Code § 17500, *et seq.* and the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*    Plaintiffs reserve the right to identify additional violations of law as further investigation warrants.

42.    Pinnacle committed unfair business practices by:

a.    Engaging in conduct (the sale of defectively designed products that, if microwaved, could expose consumers to harmful pathogens) where the utility of such conduct (if any) is outweighed by the gravity of the consequences to Plaintiffs and the Class;

b.    Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the Class;

c.    Engaging in conduct that undermines or violates the intent or spirit of the food safety and consumer protection laws detailed herein; and/or

d.    Engaging in conduct where the consumer injury is substantial and could not be reasonably avoided, and is not outweighed by any countervailing benefit to consumers or competition.

43.    Plaintiffs have suffered injury in fact and lost money as a result of Pinnacle's unlawful or unfair business practices, as they purchased the above adulterated and misbranded pot pie food products based in substantial part upon the reasonable belief such products were safe when microwaved and without having been advised of the material facts detailed herein, and have received no compensation therefor even though they now do not feel safe microwaving such products, depriving them of a key characteristic and benefit of such products.

44.    The above-described unlawful or unfair business acts and practices engaged in by Pinnacle continue to this day and present a threat to the Class and others in that Pinnacle has failed to publicly acknowledge the wrongfulness of these actions and provide the complete relief required by statute.

45.    Pursuant to California Business and Professions Code § 17203 (and any other comparable statutes the Court finds applicable), Plaintiffs, individually and on behalf of the Class,

seek an order from the Court prohibiting Pinnacle from continuing to engage in the unlawful and unfair business acts or practices set forth in this Complaint, from failing to fully disclose the true facts as set forth herein and/or ordering Pinnacle engage in a corrective informational campaign.

46.     Plaintiffs also seek an order from the Court requiring Pinnacle to provide complete equitable monetary relief, including restitutionary disgorgement and return of Pinnacle's ill-gotten gains and such other monies as the trier of fact may deem necessary to deter such conduct or prevent the use or enjoyment of all monies wrongfully obtained, including the return of any monies paid that would not otherwise have been paid had the true facts been disclosed by Pinnacle and/or if Pinnacle had complied with their legal obligations, plus any interest thereon. Plaintiffs also request the Court order an asset freeze or constructive trust be imposed over all monies that rightfully belong to the Class.

47.     Plaintiffs, individually and on behalf of the Class, therefore seek injunctive relief, equitable monetary relief and all other relief the Court finds appropriate.

## COUNT II

### Violation of Consumers Legal Remedies Act

48.     Plaintiffs hereby incorporate the above allegations by reference as if fully set forth herein.

49.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* ("CLRA"). Plaintiffs are consumers as defined by California Civil Code §1761(d), and Pinnacle's frozen food products are goods within the meaning of the CLRA.

50.     Pinnacle violated and continue to violate the CLRA by engaging in the following deceptive practices proscribed by the California Civil Code §1770(a) that constitute transactions intended to result in, and did result in, the sale of the frozen food products at issue herein to Plaintiffs and members of the Class in violation of, *inter alia*, the following provisions:

a.     Representing that the goods have characteristics, uses or benefits which they do not have (Cal. Civ. Code §1770(a)(5));

///

b.    Representing that the goods are of a particular standard, quality or grade if they are of another (Cal. Civ. Code §1770(a)(7));

c.    Representing that a transaction involves rights, remedies or obligations that are prohibited by law (Cal. Civ. Code §1770(a)(14));

d.    Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code §1770(a)(16).

51.    As detailed above, Plaintiffs and the Class suffered damage by the wrongful acts and practices of Pinnacle, in violation of California Civil Code §1781.

52.    Pursuant to Section 1782 of the CLRA, Pinnacle has received notice in writing by certified mail of the particular violations of Section 1770 of the CLRA, demanding that Pinnacle offer to resolve the problems associated with the actions detailed above and give notice of all affected consumers of the intent to so act. The time for Pinnacle to respond to those letters has passed without an agreement to take the action required by the CLRA on behalf of all affected consumers.

53.    Plaintiffs and other members of the Class, in purchasing and using the Products as herein alleged, did reasonably act in response to Pinnacle's above representations or the omitted material facts detailed herein, to their damage.

54.    Pinnacle either acted knowingly in violation of the laws detailed herein, or recklessly or negligently disregarded material facts to the contrary. Based on its knowledge or reckless disregard of the facts as detailed herein, Pinnacle was guilty of acting with malice, oppression or fraud, and Plaintiffs and members of the Class are therefore entitled to recover exemplary damages in addition to actual damages under Civil Code §1780(a)(4) for the reasons set forth above.

55.    Plaintiffs and the Class pray for all relief set forth below, as appropriate under this cause of action.

///

///

1

2

## COUNT III

### Breach of Express and Implied Warranties

3

4

56.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

5

6

7

57.     Plaintiffs and the Class purchased the food products at issue based in substantial part upon the claim such products were microwavable, and at least implicitly would be safe for consumption when they did so.

8

9

58.     These products are foodstuffs, and were not fit for the purposes for which they were intended, nor would they pass without objection in the trade or industry.

10

11

12

59.     Pinnacle was made to realize these issues, as despite receiving notice from Plaintiffs of these claims requesting it resolve these breaches of warranties, to date it has refused to take any action to fully resolve this problem as to consumers who purchased these products.

13

14

15

16

17

60.     Because these are foodstuff products and such warranties are either expressly made through statements on the products or are implied by law in all consumer transactions, even if required by law, Plaintiffs and the Class members who purchased such products are not required to establish direct privity with Pinnacle and are thus entitled to incidental and compensatory damages from Pinnacle.

18

## COUNT IV

19

### Violation of Magnuson-Moss Warranty Act

20

21

61.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

22

23

62.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Act.

24

25

63.     Pinnacle is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act.

26

27

64.     The products at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act.

28

/ / /

---

CLASS ACTION COMPLAINT                      14

65. Pinnacle's written affirmations of fact, promises and/or descriptions, as alleged herein, are each a "written warranty" and/or there exists an implied warranty for the sale of such products within the meaning of the Magnuson-Moss Act.

66. For the reasons detailed above, Pinnacle refuses to recognize or honor such warranties. Pinnacle breached its warranties as the products in question did not perform as represented by Pinnacle or were not fit for their intended use, and thereafter Pinnacle has refused to honor such warranties. Pinnacle's conduct thereby caused damages to Plaintiffs and members of the Class.

67. The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

68. Resorting to any informal dispute settlement procedure and/or affording Pinnacle a reasonable opportunity to cure its breach of written warranties is unnecessary and/or futile. At the time of sale, Pinnacle knew, reasonably should have known, or was reckless in not knowing of the design of the product was such that even if their instructions were followed it was not safe as warranted, but nevertheless failed to rectify the situation and/or disclose it to Plaintiffs and Class members. Moreover, prior to initiating this action, Plaintiffs provided Pinnacle with a written request to cure such breaches, which was ignored. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, and Pinnacle has indicated it has no desire to participate in such a process. Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiffs resort to any informal dispute settlement procedure and/or afford Pinnacle a reasonable opportunity to cure its breach of written warranties is excused and/or has been satisfied.

69. As a result of Pinnacle's breach of warranties, Plaintiffs and Class members have sustained damages and other losses in an amount to be determined at trial. Plaintiffs and Class members are entitled to recover damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as is deemed appropriate.

///

///

## COUNT V

### Common Counts and Unjust Enrichment / Common Law Restitution

70.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

71.     Pinnacle designed, manufactured, distributed, marketed and/or sold the above identified pot pie food products to Plaintiffs and Class members.

72.     Plaintiffs and the Class conferred upon Pinnacle economic benefits in the form of revenues and profits from the sale of these food products.  Pinnacle accepted or retained these benefits with awareness that Plaintiffs and the Class had not received products of the characteristics, quality, nature, fitness or value as represented by Pinnacle.

73.     Allowing Pinnacle to retain the benefits conferred by Plaintiffs and the Class under these circumstances is unjust and inequitable.

74.     As a result of Pinnacle's unjust enrichment, Plaintiffs and the Class have suffered harm and thus seek an order for disgorgement and restitution of Pinnacle's revenues, profits and other benefits from the sale of potentially contaminated food products.

## COUNT VI

### Strict Liability / Negligence

75.     Plaintiffs hereby incorporate the above allegations by reference as if fully set forth herein.

76.     Pinnacle designed, manufactured, tested or failed to test, inspected or failed to inspect, distributed, marketed and/or sold the food products at issue, which were intended to be consumed by Plaintiffs and the Class.

77.     Pinnacle placed potentially contaminated food products in the market, knowing or recklessly or negligently disregarding the fact such products were to be purchased and consumed without inspection by Plaintiffs and Class members.

78.     Pinnacle took no steps to warn consumers of the potential presence of bacteria in these food products.

/ / /

79.     Plaintiffs and the Class in fact bought and/or consumed Pinnacle's pot pie food products without inspection for contamination or presence of such bacteria.

80.     Plaintiffs and the Class were not aware of the potential contamination or presence of Salmonella or other bacteria at any time prior to purchasing such products.

81.     As a proximate result of the purchase and sale of Pinnacle's pot pie food products, Plaintiffs and the Class suffered damage in the course of using the food products in the ordinary manner in which they were intended.

**COUNT VII**

**Declaratory Relief**

82.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

83.     An actual controversy over which this Court has jurisdiction now exists between Plaintiffs and the Class and Pinnacle concerning their respective rights, duties and obligations for which Plaintiffs desire a declaration of rights under the applicable claims asserted herein.

84.     Plaintiffs and Class members may be without adequate remedy at law, rendering declaratory relief appropriate in that:

(a)     damages may not adequately compensate the Class members for the injuries suffered, nor may other claims permit such relief;

(b)     the relief sought herein in terms of ceasing such practices or providing a full and complete corrective disclosure may not be fully accomplished by awarding damages; and

(c)     if the conduct complained of is not enjoined, harm will result to Class members and the general public because Pinnacle's wrongful conduct is continuing and persons are entitled to the direct monies taken from them.

85.     Plaintiffs request a judicial determination and declaration of the rights of Class members or the public, and the corresponding responsibilities of Pinnacle. Plaintiffs also request an order declaring Pinnacle is obligated to pay restitution to all members of the Class as appropriate and otherwise pay over all funds Pinnacle wrongfully acquired either directly or indirectly because of the illegal conduct by which Pinnacle was unjustly enriched.

86.     A judicial declaration is necessary and appropriate at this time under the circumstances so the parties may ascertain their respective rights and duties.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for judgment against Pinnacle, as follows:

1.      certify this action as a class action under Federal Rules of Civil Procedure 23, designating Plaintiffs as class representatives and counsel as class counsel;

2.      awarding declaratory, equitable and injunctive relief, including enjoining Pinnacle from continuing the illegal practices set forth above, and ordering Pinnacle to pay restitution and/or restitutionary disgorgement of all monies acquired by means of any unlawful act or practice;

3.      awarding compensatory and incidental damages, in an amount to be proven at trial, and as appropriate for the particular causes of action, as well as exemplary damages under the CLRA;

4.      awarding all costs and expenses incurred in prosecuting this action, including reasonable attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5 and California Civil Code §1780;

5.      awarding pre- and post-judgment interest; and

6.      all other relief the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED:   September 25, 2009                    THE CONSUMER LAW GROUP

By: _____
       Alan M. Mansfield
       alan@clgca.com
       9466 Black Mountain Rd., Suite 225
       San Diego, CA  92126
       Tel: (619) 308-5034
       Fax: (888) 341-5048

WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr.
jwhatley@wdklaw.com
Edith M. Kallas
ekallas@wdklaw.com
Patrick J. Sheehan
psheehan@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070 / Fax: (212) 447-7077

Howard Rubinstein
Attorney at Law
howardr@pdq.net
914 Waters Avenue, Suite 20
Aspen, CO 81611
Tel: (832) 715-2788

Attorneys for Plaintiffs

# EXHIBIT 1





*Great oven baked freshness
from your microwave in
just minutes! Great for snacking
or as a quick meal.*

*Feel good about serving Swanson.*

INGREDIENTS: CHICKEN FILLING [WATER, POTATOES [WITH SODIUM ACID PYROPHOSPHATE TO MAINTAIN COLOR], CARROTS, COOKED MECHANICALLY SEPARATED CHICKEN, MODIFIED FOOD STARCH, SEASONING BLEND [BLEACHED, ENRICHED WHEAT FLOUR (MALTED BARLEY FLOUR, POTASSIUM BROMATE, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN), SALT, MALTODEXTRIN, WHEY POWDER, WHEY PROTEIN CONCENTRATE, GARLIC POWDER, SOY LECITHIN, YEAST EXTRACT, ONION POWDER, SPICES, XANTHAN GUM, TURMERIC EXTRACT AND ANNATTO], PEAS, CHICKEN FAT, NATURAL AND ARTIFICIAL CHICKEN FLAVOR [SALT, CHICKEN POWDER, CHICKEN FAT, AUTOLYZED YEAST EXTRACT, WATER, NATURAL AND ARTIFICIAL FLAVORS, INVERT SUGAR, CHICKEN BROTH, ONION POWDER, PARTIALLY HYDROGENATED SOYBEAN OIL AND COTTONSEED OIL, GRILL FLAVOR (FROM PARTIALLY HYDROGENATED SOYBEAN OIL AND COTTONSEED OIL), AND TOCOPHEROLS]], CRUST [ENRICHED FLOUR [WHEAT FLOUR, NIACIN, FERROUS SULFATE, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID], SHORTENING [LARD, HYDROGENATED LARD, PARTIALLY HYDROGENATED SOYBEAN OIL, BHT AND CITRIC ACID TO PROTECT FLAVOR], WATER, DEXTROSE, SALT, DOUGH CONDITIONER [SODIUM ALUMINOSILICATE, SALT, ENZYMES, AMMONIUM SULFATE, FUMARIC ACID], CARAMEL COLOR], GROUND CHICKEN [COOKED CHICKEN, WATER, SALT, SOY PROTEIN ISOLATE [SOY LECITHIN], CARRAGEENAN, MODIFIED FOOD STARCH, SODIUM PHOSPHATE, SPICE EXTRACT].
CONTAINS: WHEAT, MILK, SOY.

PINNACLE FOODS GROUP LLC
CHERRY HILL, NJ 08002-4112 USA
Swanson Trademark Used Under License.

6032-607-64

0 51000 06032 7

## Nutrition Facts
Serving Size 1 Pie (198g)

**Amount Per Serving**

**Calories** 380   Calories from Fat 200

| | % Daily Value* |
|---|---|
| **Total Fat** 22g | **34%** |
| Saturated Fat 8g | **40%** |
| **Cholesterol** 35mg | **12%** |
| **Sodium** 770mg | **32%** |
| **Total Carbohydrate** 34g | **11%** |
| Dietary Fiber 2g | **8%** |
| Sugars 2g | |
| **Protein** 10g | |

Vitamin A 40% • Vitamin C 0%
Calcium 2% • Iron 10%

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower based on your calorie needs:

| | Calories | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Saturated Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

Calories per gram:
Fat 9 • Carbohydrate 4 • Protein 4

*Swanson* Chicken Pot Pie

1234
1234
1234