United States District Court
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
                                           No. C 09-04555 CW
9   JULIE MEAUNRIT and LANI FELIX LOZANO,
    individually and on behalf of all       ORDER GRANTING
10  others similarly situated,              DEFENDANT'S MOTION
                                           TO DISMISS
11            Plaintiffs,                   (Docket No. 10)

12       v.

13  THE PINNACLE FOODS GROUP, LLC,

14            Defendant.
    _____/
15

16       Defendant The Pinnacle Foods Group, LLC moves to dismiss

17  Plaintiffs Julie Meaunrit and Lani Felix Lozano's complaint for

18  lack of subject matter jurisdiction and for failure to state a

19  claim.  Plaintiffs oppose the motion.  The motion was taken under

20  submission on the papers.  Having considered all of the papers

21  submitted by the parties, the Court GRANTS Defendant's Motion to

22  Dismiss (Docket No. 10).

23                            BACKGROUND

24       Defendant produces various types of frozen foods under the

25  "Swanson" and "Hungry Man" brands.  Plaintiffs are consumers who

26  have purchased Defendant's frozen pot pies for their families to

27  eat.

28       Citing unnamed "recent reports," Plaintiffs allege that they

had "no choice but to throw out" Defendant's products because
Plaintiffs "cannot guarantee" their safety.  Compl. ¶¶ 8 and 9.  In
particular, they express concerns about bacterial contamination.
Plaintiffs allege that if they were to follow Defendant's cooking
instructions, the pot pies may not "reach the 'kill step'
temperature necessary to destroy dangerous bacteria."  Compl. ¶¶ 2
and 3.  They maintain that the requisite temperature is
"approximately 170 degrees."  Compl. ¶ 17.  Plaintiffs allege that
the non-contamination of the pot pies is uncertain because "it is
difficult to determine if they have been thoroughly cooked . . . ."
Compl. ¶ 14.  Plaintiffs maintain that the use of a microwave oven
to cook the pot pies increases doubts as to their non-
contamination.

Plaintiffs claim that, because they discarded Defendant's pot
pies, they "sustained a loss of money or property."  Compl. ¶¶ 8
and 9.  They assert the following causes of action against
Defendant: (1) violation of California's Unfair Competition Law
(UCL), Cal. Bus. & Prof. Code §§ 17200, _et seq._; (2) violation of
California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code
§§ 1750, _et seq._; (3) breach of express and implied warranties;
(4) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301,
_et seq._; (5) "common counts and unjust enrichment/common law
restitution;" (6) "strict liability/negligence;" and
(7) declaratory relief.  They intend to move to certify their case
as a class action.

                              DISCUSSION

I.   Dismissal under Federal Rule 12(b)(1)

Subject matter jurisdiction is a threshold issue which goes to

the power of the court to hear the case.  Federal subject matter
jurisdiction must exist at the time the action is commenced.
Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,
858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed
to lack subject matter jurisdiction until the contrary
affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873
F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district
court lacks subject matter jurisdiction over the claim.  Fed. R.
Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the
sufficiency of the pleadings to establish federal jurisdiction, or
allege an actual lack of jurisdiction which exists despite the
formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen.
Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v.
Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).  Because
challenges to standing implicate a federal court's subject matter
jurisdiction under Article III of the United States Constitution,
they are properly raised in a motion to dismiss under Rule
12(b)(1).  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

To establish standing, a plaintiff must show: "(1) he or she
has suffered an injury in fact that is concrete and particularized,
and actual or imminent; (2) the injury is fairly traceable to the
challenged conduct; and (3) the injury is likely to be redressed by
a favorable court decision."  Salmon Spawning & Recovery Alliance
v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008).  A concrete
injury is one that is "'distinct and palpable . . . as opposed to
merely abstract.'"  Schmier v. U.S. Court of Appeals for 9th
Circuit, 279 F.3d 817, 821 (9th Cir. 2002) (quoting Whitmore v.

*United States District Court*
*For the Northern District of California*

<u>Arkansas</u>, 495 U.S. 149, 155 (1990)).  The "injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus." <u>Schmier</u>, 279 F.3d at 821 (citing <u>Whitmore</u>, 495 U.S. at 155).

Defendant asserts that Plaintiffs have not suffered a cognizable injury for the purposes of Article III standing.  It maintains that this is a "no-injury product liability" case, in which Plaintiffs claim economic harm without physical or emotional injury.

Plaintiffs respond that they have suffered "economic injury," based on their purchase of "goods that are not suitable for" consumption.  Opp'n at 4.  They "seek to recover for economic harm arising from the <u>present</u> defect of the goods based on the specific facts of this case." Opp'n at 5 (emphasis in original). Plaintiffs allege that, based on Defendant's cooking instructions, the products "may not reach" the temperature required to eliminate the alleged harmful pathogens contained therein.  Compl. ¶¶ 3, 17. Throughout their complaint, Plaintiffs allege a "potential" for contamination.  <u>See, e.g.</u>, Compl. ¶¶ 12-13, 15.

Plaintiffs have not plead a cognizable injury in fact.  Their allegations are similar to those in <u>Birdsong v. Apple, Inc.</u>, in which the Ninth Circuit concluded that the plaintiffs lacked standing under the UCL, which incorporates the Article III injury-in-fact requirement.  590 F.3d 955, 960 n.4 (9th Cir. 2009). There, the plaintiffs alleged that the defendant's iPod "poses an unreasonable risk of noise-induced hearing loss to its users." <u>Id.</u> at 956.  The court stated that the plaintiffs did not allege an

4

injury to themselves, but rather plead harm to "other unidentified iPod users who might choose to use their iPods in an unsafe manner." Id. at 960. The injury plead was also "conjectural and hypothetical" because the plaintiffs merely asserted that "some iPods have the 'capability' of producing unsafe levels of sound and that consumers 'may' listen to their iPods at unsafe levels combined with an 'ability' to listen for long periods of time." Id. at 961. Finally, the court concluded that the plaintiffs' alleged economic loss was not a cognizable injury. The plaintiffs had not plead a loss of value because the risk causing the alleged loss was too hypothetical. Id. Likewise, the plaintiffs' "benefit of the bargain theory" failed because they had not plead facts supporting their claim that they were deprived of "an agreed-upon benefit in purchasing their iPods." Id.

Here, as in Birdsong, Plaintiffs do not allege that they were injured by contaminated pot pies. They do not even plead that others have become ill after consuming Defendant's products. At most, Plaintiffs complain that the pies might contain harmful pathogens and, if consumers undercook Defendant's pot pies, these pathogens could cause illness. This speculative, hypothetical injury is not sufficient to support Article III standing.

Plaintiffs also complain that they "bargained for and were promised safe pot pies but instead received products that, when microwaved according to their instructions, were not safe to consume." Opp'n at 4. However, they do not plead facts to support their claim that the pies were not actually fit for consumption. They merely assert the potential for contamination. And although Plaintiffs discarded the pies, which frustrated the purpose for

United States District Court
For the Northern District of California

which they were purchased, Plaintiffs do not make factual allegations to suggest that this action was reasonably attributable to Defendant.  They cannot create an injury by taking unilateral action unhinged from Defendant's conduct.  To the extent that there was an agreed-upon benefit, Plaintiffs appear to have deprived themselves of it.

   Indeed, Plaintiffs' allegations provide even less support for standing than those that were found insufficient in Whitson v. Bumbo, 2009 WL 1515597 (N.D. Cal.).  There, the consumer plaintiff alleged that the defendant manufacturer misrepresented the safety of its baby seat; she therefore brought claims for violations of state consumer protection laws, breach of express and implied warranties and unjust enrichment.  Id. at *1-*2.  Although the manufacturer had warned that consumers should never use the seat on a raised surface, the packaging contained photos depicting three babies in seats on a table.  Id. at *1.  After receiving reports that twenty-eight children had fallen out of the seat, three of whom sustained skull fractures, the Consumer Products Safety Commission recalled the seat.  Id. at *2.  The district court dismissed the plaintiff's claim on standing grounds, concluding that she had failed to "allege any actual injury."  Id. at *6.  The plaintiff did not allege that any baby used or fell from the seat she purchased.  Id.  Plaintiffs attempt to distinguish Whitson by asserting that they are not seeking to recover for future harm. However, the gravamen of their complaint is that Defendant's products, if insufficiently cooked, may not reach a temperature to eliminate pathogens, leading to a potential for contamination. Thus, as in Whitson, Plaintiffs are complaining of some possible,

6

future harm.  Notably, they do not allege that Defendant's products have caused anyone injury or that the pies are subject to a recall. In this sense, Plaintiffs offer even less basis for standing than the <u>Whitson</u> plaintiff.

The cases cited by Plaintiffs are distinguishable and do not require a contrary conclusion.  In <u>Danvers Motor Co., Inc. v. Ford Motor Co.</u>, the Third Circuit found that the automobile dealer plaintiffs had standing based on their allegations that the car manufacturer defendant's certification program violated state and federal law and, among other things, compelled them to spend money. 432 F.3d 286, 290 (3d Cir. 2005).  Here, no such compulsion exists and, as already stated, the harm of which Plaintiffs complain is hypothetical.  <u>Sanchez v. Wal-Mart Stores, Inc.</u>, 2008 WL 3272101 (E.D. Cal.), is equally inapposite.  There, the plaintiff alleged that a stroller that she had purchased had a "'dangerous, unguarded and unmitigated pinch point . . . .'" <u>Id.</u> at *1.  Here, Plaintiffs do not make factual allegations supporting their claim that Defendant's products are dangerous or that there is an imminent or unmitigable risk of harm.  Nor do the state cases cited by Plaintiffs support their position; they do not involve the type of speculative harm of which Plaintiffs complain.  <u>See</u> <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298 (2009); <u>Aron v. U-Haul Co. of Cal.</u>, 143 Cal. App. 4th 796, 802-03 (2006); <u>Duskin v. Boskey</u>, 82 Cal. App. 4th 171, 198 (2000).

Because Plaintiffs do not plead a cognizable injury-in-fact, they lack Article III standing to assert their claims. Accordingly, the Court dismisses Plaintiffs' claims with leave to amend.  Should Plaintiffs file an amended complaint, their factual

7

allegations must not be inconsistent with those in their current complaint.

II.  Dismissal under Federal Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

Even though Plaintiffs have not established standing, to provide guidance for any amended pleading, the Court nevertheless evaluates whether they have stated claims.  Because they are no longer pursuing their claim for "strict liability/negligence,"

8

Opp'n at 4 n.1, the Court only considers Plaintiffs' six remaining claims.

Defendant argues that all of Plaintiffs' state law claims are explicitly preempted by the Federal Meat Inspection Act (FMIA) and the Poultry Products Inspection Act (PPIA).[1]  Plaintiffs acknowledge that the pot pies are regulated by the FMIA and the PPIA, but assert that these statutes do not preempt their claims. Defendant also contends that Plaintiffs' claims are inadequately plead.

    A.   UCL Claim

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  <u>Chabner v. United Omaha Life Ins. Co.</u>, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the basis for a UCL claim.  <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 838-39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law."  <u>Olszewski v. Scripps Health</u>, 30 Cal. 4th 798, 827 (2003).

Plaintiffs plead the unlawful and unfair prongs of the UCL. They allege that Defendant acted unlawfully by: violating laws that prohibit the sale of adulterated or misbranded food products;

---

[1] Because the preemption provisions in these federal statutes are directed at state laws, this argument does not appear to apply to Plaintiffs' claim under the federal Magnuson-Moss Warranty Act. Although this claim may not be preempted, as discussed below, it nevertheless fails because Plaintiffs have not stated a state law warranty claim upon which it can be based.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

violating California Business and Professions Code §§ 17500, <u>et seq.</u>; violating the CLRA; and breaching express and implied warranties.   They aver that Defendant acted unfairly by

a.   Engaging in conduct (the sale of defectively designed products that, if microwaved, could expose consumers to harmful pathogens) where the utility of such conduct (if any) is outweighed by the gravity of the consequences to Plaintiffs and the Class;

b.   Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the Class;

c.   Engaging in conduct that undermines or violates the intent or spirit of food safety and consumer protection laws detailed herein; and/or

d.   Engaging in conduct where the consumer injury is substantial and could not be reasonably avoided, and is not outweighed by any countervailing benefit to consumers or competition.

Compl. ¶ 42.

       1.   Preemption Analysis

     Under the Supremacy Clause, state law that conflicts with federal law has no effect.   <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 516 (1992) (citing U.S. Const. art. VI, cl. 2). "[W]ithin Constitutional limits Congress may preempt state authority by so stating in express terms."   <u>Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n</u>, 461 U.S. 190, 203 (1983).

     A court's preemption analysis is guided by two principles. "First, there is a presumption against supplanting 'the historic police powers of the States' by federal legislation 'unless that [is] the clear and manifest purpose of Congress.'"   <u>Gordon v. Virtumundo, Inc.</u>, 575 F.3d 1040, 1060 (9th Cir. 2009) (quoting <u>Medtronic v. Lohr</u>, 518 U.S. 470, 485 (1996)) (alteration marks in

**United States District Court**
For the Northern District of California

Gordon).  As a result, express preemption clauses should be narrowly construed.  Gordon, 575 F.3d at 1060.  Second, Congress's purpose "'is the ultimate touchstone in every preemption case.'" Gordon, 575 F.3d at 1060 (quoting Medtronic, 518 U.S. at 485). Thus, courts must analyze the language of the statute and the overall statutory scheme.  Gordon, 575 F.3d at 1060.

In conducting a preemption analysis, a court "must consider the theory of each claim and determine 'whether the legal duty that is the predicate' of that claim is inconsistent with" federal law. Metrophones Telecomm'ns, Inc. v. Global Crossing Telecomm'ns, Inc., 423 F.3d 1056, 1075 (9th Cir. 2005) (quoting Cipollone, 505 U.S. at 523-24).

Congress enacted the FMIA and the PPIA in part to prevent the interstate transfer of adulterated and misbranded meat and poultry products.  See 21 U.S.C. §§ 452 and 602.  Specifically, the FMIA states that it "is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged."  Id. § 602.

The FMIA and the PPIA preempt state laws that satisfy two conditions:[2]  (1) the state law must impose marking, labeling,

---

[2] The preemption provision of the FMIA provides:

Marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of

(continued...)

United States District Court

For the Northern District of California

packaging or ingredient requirements; and (2) these requirements must be "in addition to, or different than" those required under federal law.  21 U.S.C. §§ 467e and 678.  State statutory and common law can impose requirements that satisfy the first prong. For the purposes of preemption, "a 'requirement' is a 'rule of law that must be obeyed,' whether it arises from common law principles enforceable in damages actions or in a statute."  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1171 (9th Cir. 2009) (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 445 (2005)); see also Riegel v. Medtronic, Inc., 552 U.S. 312, 324 (2008) ("Absent other indication, reference to a State's 'requirements' includes its common-law duties.")  Concerning the second prong, a state requirement is in addition to or different from federal requirements if it is not "equivalent" or "parallel."  Bates, 544 U.S. at 447.  A "state cause of action that seeks to enforce a federal requirement 'does not impose a requirement that is different from or in addition to, requirements under federal law.'" Id. at 448 (quoting Medtronic, 518 U.S. at 513 (O'Connor, J., concurring in part and dissenting in part)).

Plaintiffs appear to assert two theories of liability under the UCL.  First, Plaintiffs aver that Defendant acted unlawfully and unfairly by selling adulterated food products.  See, e.g., Compl. ¶¶ 22, 41.  To the extent that it is based on this theory,

---

[2](...continued)
this chapter . . . .

21 U.S.C. § 678.  The PPIA contains a nearly identical preemption provision, only adding that states may not impose "storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce."  Id. § 467e.

United States District Court
For the Northern District of California

their UCL claim would not create labeling requirements for the purposes of preemption.  Second, Plaintiffs complain that Defendant acted unlawfully by making misrepresentations on its labeling.[3] This theory seeks to apply the UCL in a manner that would impose labeling requirements, implicating preemption.  Liability under this theory would mean that Defendant failed to satisfy state law duties concerning its labels.  Thus, to avoid preemption of a UCL claim resting on such allegations, the claim must not impose requirements "in addition to, or different than" those provided under the FMIA and the PPIA.  In other words, duties arising from liability on a UCL labeling claim must parallel those under federal law.

In <u>Riegel</u>, the Supreme Court concluded that the plaintiffs' state law claims, including those for strict liability, breach of implied warranty and negligence, were preempted because they imposed requirements different from or in addition to those applied under federal law.  552 U.S. at 330.  At issue was a statute that expressly preempted "state requirements 'different from, or in addition to, any requirement applicable . . .' under federal law." <u>Id.</u> at 321 (quoting 21 U.S.C. § 360k(a)(1)).  The defendant's catheters were reviewed by the Food and Drug Administration (FDA) to "weigh any probable benefit to health from the use of the device

---

[3] Throughout Plaintiffs' opposition, they assert that Defendant claims that its pot pies are "microwavable."  Defendant correctly notes that its product packaging attached to Plaintiff's complaint does not explicitly make such a claim.  The box, however, provides cooking instructions for microwave ovens and also states, "Great oven baked freshness from your microwave in just minutes!"  The instructions and this statement support a reasonable inference the pot pie is represented to be "microwavable."
Plaintiffs do not point to any representations by Defendant other than those made on its labels.

against any probable risk of injury or illness from such use."
Riegel, 552 U.S. at 318 (editing marks omitted).  The Court
concluded that a jury's verdict in favor of the plaintiffs under
state common law that "requires a manufacturer's catheters to be
safer, but hence less effective, than the model the FDA approved
disrupts" the federal regulatory scheme.  Id. at 325.  And the
Court noted that, unlike the FDA, a jury would not give appropriate
weight to the costs and benefits of a medical device.  Id.

Here, Plaintiffs allege that the labels on Defendant's pot
pies are false and misleading.  However, the USDA has
reviewed the labels, considered whether they were false or
misleading and approved of them.  See 21 U.S.C. §§ 457 and 607; 9
C.F.R. §§ 317.4(a) and 317.8(a).[4]  The agency apparently found no
fault with Defendant's instruction to heat the pies to 165°, or
with its implied representation that the pies could be safely
consumed if they were microwaved to that temperature.
Nevertheless, a jury could conclude that the labels should disclose
more information or employ different language, in which case it
would introduce requirements in addition to or different from those
imposed by the USDA.  Although, as Plaintiffs note, both federal
and state law prohibit false or misleading language in labeling, it
does not follow that a jury would evaluate Defendant's labels in
the same fashion as the USDA.  See Riegel, 552 U.S. at 324-25.  To
allow a jury to pass judgment on Defendant's labels,

_____

[4] Plaintiffs assert that there is no explicit requirement that
the USDA, in considering whether labels are false or misleading,
evaluate a product's cooking instructions or whether it is in fact
"microwavable."  Opp'n at 9.  However, Plaintiffs do not provide
facts, authority or persuasive argument to support their suggestion
that the USDA excludes these factors from its review.

14

notwithstanding the USDA's approval, would disrupt the federal regulatory scheme.

Plaintffs cite In re Farm Raised Salmon Cases, 42 Cal. 4th 1077 (2008), which is distinguishable.  There, the California Supreme Court determined that claims for deceptive marketing of food products were not preempted by federal law.  Id. at 1083.  At issue was the Federal Food, Drug and Cosmetic Act (FDCA), which deems food misbranded if its labeling is false or misleading, or if the food contains artificial coloring and the label fails to state this fact.  Id. at 1085 (citing 21 U.S.C. § 343(a), (k)).  Under the FDCA, state laws are preempted to the extent that they impose "any requirement for the labeling of food of the type required by section . . . 343(k) of this title that is not identical to the requirement of such section . . . ."  21 U.S.C. § 343-1(a)(3).  The court, reviewing the language in relevant statutes, concluded that state law imposed identical requirements.  Farm Raised Salmon Cases, 42 Cal. at 1086-87.  However, the court rendered its decision before Riegel and did not consider the impact of a federal agency's approval on a preemption analysis.  As a result, the court had no occasion to evaluate whether a jury verdict could impose requirements in addition to or different from those applied through a federal approval process.

Accordingly, even if Plaintiffs had Article III standing, their UCL claim, to the extent that it is based on false or misleading statements on Defendant's labels, is preempted by the FMIA and the PPIA.  In any amended complaint, a UCL claim based on labeling cannot propose requirements in addition to or different from those provided under federal law.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    2.   Sufficiency of Pleadings

2        As noted above, Plaintiffs' UCL claim appears to rest on two

3    bases: (1) Defendant's unlawful and unfair sale of adulterated

4    products and (2) unlawful misrepresentations by Defendant.

5              a.   Sale of Adulterated Products

6        Plaintiffs allege that Defendant sold adulterated food in

7    violation of California Health and Safety Code § 110620, which

8    states, "It is unlawful for any person to manufacture, sell,

9    deliver, hold, or offer for sale any food that is adulterated."

10   Adulterated food is defined as any food that "bears or contains any

11   poisonous or deleterious substance that may render it injurious to

12   health of man or any other animal that may consume it."  Cal.

13   Health & Safety Code § 110545.

14       Plaintiffs' allegations do not support an inference that

15   Defendant manufactured or sold adulterated food.  They allege that,

16   if not fully cooked, Defendant's products "may not reach the

17   required 'kill step' temperature" necessary to eliminate pathogens.

18   Compl. ¶ 3.  They have not alleged, however, that the pot pies --

19   once fully cooked -- contain substances that can injure their

20   health.

21       Thus, even if Plaintiffs had Article III standing to assert

22   it, their UCL claim, to the extent that it relies on allegations

23   that Defendant sold adulterated food, is insufficient.

24              b.   Material Misrepresentations and Omissions

25       Plaintiffs allege that neither they "nor likely many Class

26   members would have purchased these products or paid the prices they

27   did had these material misrepresented and undisclosed facts been

28   disclosed."  Compl. ¶ 24; see also Compl. ¶ 53 (stating that

Plaintiffs acted reasonably "in response to Pinnacle's above representations or the omitted material facts detailed herein, to their damage"). These allegations imply that Defendant engaged in fraudulent conduct. Thus, although they do not allege the fraudulent prong of the UCL, if Plaintiffs were to re-plead their UCL claim based on misleading labels, they would be required to comply with Rule 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (finding that, even though a plaintiff plead the unfair prong, his UCL claim was grounded in fraud and therefore subject to Rule 9(b)).

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Secs. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed. Id. at 1547; see Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally.").

Plaintiffs argue that the assertion that the pies are "microwavable" is misleading "because after microwaving the product according to the instructions, the products were not safe to

consume as they may not have reached the internal temperature to kill pathogens." Opp'n at 13-14. This argument and Plaintiffs' allegations do not refute Defendant's claim that its pies are "microwavable." Plaintiffs' argument does not account for Defendant's statements on the packaging that the pot pies "MUST BE COOKED THOROUGHLY, FOR FOOD SAFETY AND QUALITY," and must be "COOKED TO AN INTERNAL TEMPERATURE GREATER THAN 165° PRIOR TO EATING." Compl. Ex. 1 (upper case in original). These warnings notify consumers that they bear some responsibility for ensuring that the food may be consumed safely. The notices indicate that the pies may be unsafe for consumption if they are not fully cooked. Thus, given these warnings, stating that the pie is "microwavable" is not misleading.

Accordingly, even if they had Article III standing and this theory of liability were not preempted, Plaintiffs' UCL claim, to the extent it is based on Defendant's alleged material misrepresentations or omissions, is insufficiently plead. If Plaintiffs intend to pursue this theory, their amended complaint must plead facts to show why "microwavable" is misleading.

B. CLRA Claim

The CLRA makes illegal "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). As applicable here, proscribed activities include

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . .

> (7) Representing that goods or services are of a

18

particular standard, quality, or grade, or that goods are
of a particular style or model, if they are of
another.

Id.

Like their UCL claim, Plaintiffs' CLRA claim appears to be
based on alleged misrepresentations on Defendant's labels.  Thus,
the preemption and Rule 9(b) analyses above apply with equal force
to this claim.  Accordingly, even if Plaintiffs had Article III
standing, their CLRA claim would be preempted by the FMIA and the
PPIA and subject to dismissal for failure to comply with Rule 9(b).
In any amended complaint, Plaintiffs must plead this claim in a
manner that avoids preemption and that satisfies Rule 9(b)'s
heightened pleading requirements.

    C.   Claim for Breach of Express and Implied Warranties

Plaintiffs base their breach of express and implied warranties
claims on Defendant's representations that its products are
"microwavable."  Although Plaintiffs do not explicitly identify the
source of these assertions, they attach a copy of Defendant's
packaging to their complaint.  The Court therefore assumes that the
alleged express warranty of which Plaintiffs complain appears on
the products' labels.  The Court also assumes that this claim
implicates the implied warranty of merchantability.  See Compl.
¶ 60 (alleging that Defendant breached warranties that "are implied
by law in all consumer transactions"); see also Cal. Civ. Code
§ 1792 (stating that every "sale of consumer goods that are sold at
retail in this state shall be accompanied by the manufacturer's and
the retail seller's implied warranty that the goods are
merchantable").

United States District Court
For the Northern District of California

1          1.   Preemption Analysis

2          Plaintiffs cite <u>Bates</u> to argue that their state law warranty

3     claims are not preempted.   There, the Supreme Court held that the

4     plaintiffs' express warranty claim was not preempted by the Federal

5     Insecticide, Fungicide, and Rodenticide Act (FIFRA).   544 U.S. at

6     444-45.   The defendant's warranty appeared on its label, which

7     stated:

8              Dow AgroSciences warrants that this product conforms to
               the chemical description on the label and is reasonably
9              fit for the purposes stated on the label when used in
               strict accordance with the directions, subject to the
10             inherent risks set forth below.

11    <u>Id.</u> at 445 n.16.   The Environmental Protection Agency (EPA) had

12    reviewed and approved of the defendant's label.   <u>Id.</u> at 438.   In

13    its review, the EPA considered whether the product was misbranded,

14    which under FIFRA is defined as bearing "a statement that is 'false

15    or misleading in any particular,' . . . ."   <u>Id.</u> (citing 7 U.S.C.

16    § 136(q)(1)(A); 40 C.F.R. § 156.10(a)(5)(ii)).   However, the EPA

17    did not consider the efficacy of the pesticide and stated:

18             EPA's approval of a pesticide label does not reflect any
               determination on the part of EPA that the pesticide will
19             be efficacious or will not damage crops or cause other
               property damage . . . .
20

21    <u>Bates</u>, 544 U.S. at 440 (citation omitted).

22         In rejecting the defendant's argument that FIFRA preempted the

23    plaintiff's express warranty claim, the Court explained,

24             Rules that require manufacturers to design reasonably
               safe products, to use due care in conducting appropriate
25             testing of their products, to market products free of
               manufacturing defects, and to honor their express
26             warranties or other contractual commitments plainly do
               not qualify as requirements for "labeling or packaging."

27    <u>Id.</u> at 444.   Even though the defendant placed its warranty on the

28    product's label, the Court concluded that a claim for breach of an

20

1    express warranty would not create a requirement implicating

2    preemption because such a claim

> asks only that a manufacturer make good on the
> contractual commitment that it voluntarily undertook by
> placing that warranty on its product. Because this
> common-law rule does not require the manufacturer to make
> an express warranty, or in the event that the
> manufacturer elects to do so, to say anything in
> particular in that warranty, the rule does not impose a
> requirement "for labeling or packaging."

<u>Id.</u> (citation omitted).

Here, Plaintiffs neither plead nor explain the nature of their claim for breach of an express warranty. However, based on their allegations, their claim appears to rest on the following definition of an express warranty: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313(1)(b). The PPIA and FMIA preempt such a claim. Because the gravamen of Plaintiffs' express warranty claim is a purportedly inaccurate description of the product contained on Defendant's labeling, the Court construes their cause of action for breach of express warranty to impose labeling requirements. Plaintiffs' express warranty claim differs from that asserted in <u>Bates</u>. There, the defendant voluntarily offered an express warranty concerning the fitness of the product and placed this warranty on the label. The EPA explicitly stated that it did not review the product's effectiveness or risks for crop or property damage. Here, Plaintiffs rely for the express warranty on the label and the representations contained therein, which the USDA did review for falsity. Because California law transforms any description of a product into an express warranty, the breach of

United States District Court
For the Northern District of California

21

**United States District Court**
For the Northern District of California

express warranty claim here, just like the UCL and CLRA claims, would regulate how Defendant represented its products on its labeling.  To allow such a claim, however denominated, would evade the preemptive effect of the FMIA and the PPIA.  A jury finding that the pies are not "microwavable," even though the USDA concluded that this statement is not false or misleading, would impose requirements in addition to or different from those provided by federal law.  Thus, as plead, Plaintiffs' breach of express warranty claim is preempted.

For the same reasons, the FMIA and the PPIA preempt Plaintiffs' breach of implied warranty claim, to the extent that it rests on Defendant's labeling.  The implied warranty of merchantability defines goods to be merchantable if they are, among other things, "adequately contained, packaged, and labeled" and conform "to the promises or affirmations of fact made on the container or label."  Cal. Civ. Code § 1791.1(3)-(4); see also Cal. Com. Code § 2314(2)(e)-(f).  These aspects of merchantability constitute labeling requirements; they mandate that a label accurately represent a product.  And, if a jury were to conclude that Defendant's labeling misrepresented the pot pies, the verdict would impose requirements in addition to or different from those under federal law.

Accordingly, even if Plaintiffs had Article III standing, their claim for breach of express and implied warranties would be preempted by federal law to the extent that it rests on representations contained in Defendant's labeling that were within the scope of the USDA's review.

**United States District Court**
For the Northern District of California

1      2.   Sufficiency of Pleadings

2          Under California law, courts apply three steps to analyze a

3     claim for breach of an express warranty.

4          First, the court determines whether the seller's
       statement amounts to an affirmation of fact or promise
5       relating to the goods sold.  Second, the court determines
       if the affirmation or promise was part of the basis of
6       the bargain.  Finally, if the seller made a promise
       relating to the goods and that promise was part of the
7       basis of the bargain, the court must determine if the
       seller breached the warranty.

8     McDonnell Douglas Corp. v. Thiokol Corp., 124 F.3d 1173, 1176 (9th

9     Cir. 1997) (citing Keith v. Buchanan, 173 Cal. App. 3d 13 (1985)).

10         Plaintiffs allege that Defendant provides an express warranty

11    that its product are "microwavable," which they claim means that

12    the products "would be safe to consume upon being microwaved in

13    accordance with the instructions."  Opp'n at 14-15.  Regardless of

14    whether this definition is correct, Plaintiffs have not alleged

15    that Defendant has breached this warranty.  They allege that if

16    Defendant's cooking instructions are followed, "the required 'kill

17    step' temperature may not be reached."  Opp'n at 15 (emphasis

18    added); see also Compl. ¶ 3.  The possibility that Defendant's

19    alleged warranty might fail if the instructions are not followed

20    fully is not sufficient to support Plaintiffs' claim for breach of

21    express or implied warranties.

22         Accordingly, even if Plaintiffs had Article III standing and

23    this claim were not preempted, it is inadequately plead.

24         D.   Magnuson-Moss Warranty Act Claim

25         Because the preemption provisions of the FMIA and the PPIA are

26    directed at state law, they do not preempt the Magnuson-Moss

27    Warranty Act (MMWA).  Nevertheless, Plaintiffs' MMWA claim fails.

28

United States District Court
For the Northern District of California

Violations of the MMWA can rest on breaches of warranties created under state law. Birdsong, 590 F.3d at 958 n.2; Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008). Plaintiffs do not argue that their Magnuson-Moss Warranty Act claim rests on bases other than their state law warranty claims. Because those claims fail, this claim must be dismissed for the same reasons.

E.   Claim for Unjust Enrichment and Common Law Restitution

California courts appear to be split as to whether there is an independent cause of action for unjust enrichment. Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2007) (applying California law). One view is that unjust enrichment is not a cause of action, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004). In McBride, the court construed a "purported" unjust enrichment claim as a cause of action seeking restitution. Id. There are at least two potential bases for a cause of action seeking restitution: (1) an alternative to breach of contract damages when the parties had a contract which was procured by fraud or is unenforceable for some reason; and (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct and the plaintiff chooses not to sue in tort but to seek restitution on a quasi-contract theory. Id. at 388. In the latter case, the law implies a contract, or quasi-contract, without regard to the parties' intent, to avoid unjust enrichment. Id.

Another view is that a cause of action for unjust enrichment exists and its elements are receipt of a benefit and unjust

retention of the benefit at the expense of another.  Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000); First Nationwide Savings v. Perry, 11 Cal. App. 4th 1657, 1662-63 (1992).

Plaintiffs denominate their claim as one for unjust enrichment and restitution.  On its face, this claim does not impose labeling requirements which would be preempted.

Nevertheless, in addition to their lack of Article III standing, Plaintiffs have not sufficiently plead a predicate cause of action that would support a restitutionary remedy.  In any amended complaint, Plaintiffs must plead a cause of action for which they would be entitled to restitution.

F.   Claim for Declaratory Relief

The Declaratory Judgment Act (DJA) permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy."  28 U.S.C. § 2201; see Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986).  The "actual controversy" requirement of the DJA is the same as the "case or controversy" requirement of Article III of the United States Constitution.  Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1993).  Even if Plaintiffs could demonstrate Article III standing, they have not stated a claim that would support a declaratory judgment.  Accordingly, the Court dismisses this claim with leave to amend.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss.  (Docket No. 10.)  The Court's holding is summarized as follows:

1.   Plaintiffs have not plead a cognizable injury in fact and

therefore lack Article III standing to bring any of their claims.  The Court dismisses their complaint for lack of subject matter jurisdiction.  Plaintiffs are granted leave to amend if they can plead facts that would establish their standing.

2.    In addition, Plaintiffs' UCL, CLRA and breach of express and implied warranty claims, to the extent that they rely on the representations made on Defendant's labels, are preempted by the FMIA and the PPIA.

3.    Furthermore:

    a.    Plaintiffs' UCL and CLRA claims based on misrepresentations fail because they have not plead, as required under Rule 9(b), the falsity of Defendant's implied statement that its pies could be safely consumed if microwaved in accordance with the package's instructions.

    b.    Plaintiffs' UCL claim based on the sale of adulterated food products fails because they have not plead facts to support their claim that, after consumers followed Defendant's cooking instructions, its pot pies would nevertheless in fact be adulterated.

    c.    Plaintiffs' claim for breach of express and implied warranties fails because they have not plead facts to support their claim that Defendant's products are not "microwavable" or are otherwise unsafe for consumption.

    d.    Plaintiffs' claim under the Magnuson-Moss

Warranty Act fails because they have not stated a state law claim for breach of warranty.

e.  Plaintiffs' unjust enrichment and restitution claim fails because they have not stated a predicate claim warranting such relief.

f.  Plaintiffs' claim for declaratory relief fails because they have not plead a case or controversy.

Plaintiffs are granted fourteen days from the date of this Order to file an amended complaint addressing the above-mentioned deficiencies.  If Plaintiffs do so, Defendant may file a motion to dismiss three weeks thereafter, with Plaintiffs' opposition due two weeks following and Defendant's reply due one week after that.  The motion shall be taken under submission on the papers.

The case management conference, currently scheduled for May 11, 2010, is continued to August 3, 2010 at 2:00 p.m.

IT IS SO ORDERED.

Dated:  May 5, 2010

_____
CLAUDIA WILKEN
United States District Judge

27